# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| AASHISH KALRA, | ) | 3:20-CV-01393 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ADLER POLLOCK & SHEEHAN, P.C., | ) | |
| MICHAEL GILLERAN | ) | |
| *Defendants*. | ) | |
| | ) | |
| | ) | MARCH 15, 2022 |

## MEMORANDUM OF DECISION RE: DEFENDANTS' MOTION TO DISMISS OR STAY (ECF NO. 19)

Kari A. Dooley, United States District Judge

In this diversity action, Plaintiff Aashish Kalra seeks indemnification and contribution from Defendants Adler Pollock & Sheehan, P.C. ("APS") and Michael Gilleran, his former counsel, with respect to a judgment entered against him in a Connecticut state court action for breach of contract, breach of fiduciary duty, and libel in favor of his former business partner, Rakshitt Chugh. On January 25, 2021, Defendants moved to dismiss both counts of Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) on the primary basis that Connecticut law precludes indemnification and contribution claims where the party seeking contribution and indemnification was found liable of intentional wrongdoing. Defendants alternatively argue that Plaintiff failed to allege facts establishing a claim for indemnification or contribution as required under Connecticut law even where such claims are permitted between joint tortfeasors.[1] In his March 1, 2021 opposition memorandum, Plaintiff contends principally that Defendants' motion improperly relies on material not contained within the Amended Complaint, in substance sounding

---

[1] The Defendants advance additional arguments which the Court does not reach.

1

in summary judgment, and thus the issues raised therein are not justiciable until discovery is completed. For the reasons that follow, Defendants' motion to dismiss is GRANTED.[2]

**Standard of review**

On a motion to dismiss under Rule 12(b)(6), the Court "must accept as true the factual allegations in the complaint and draw all inferences in the plaintiff's favor." *Kinsey v. New York Times Co.*, 991 F.3d 171, 174 (2d Cir. 2021) (quotation marks, alterations, and citation omitted). To survive a motion to dismiss filed pursuant to Rule 12(b)(6), the "complaint must 'state a claim to relief that is plausible on its face,'" setting forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Kolbasyuk v. Capital Mgmt. Servs., LP*, 918 F.3d 236, 239 (2d Cir. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The assessment of whether a complaint's factual allegations plausibly give rise to an entitlement to relief 'does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal' conduct." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (quoting *Twombly*, 550 U.S. at 556). At this stage "the court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Id*. "Rule 12(b) applies equally to claims, counterclaims, cross-claims and third-party claims, and . . . motion[s] to dismiss . . . [third-party claims] are evaluated under these same standards." *Covenant Imaging, LLC v. Viking Rigging & Logistics, Inc.*, No. 3:20-CV-00593 (KAD), 2021 WL 4147991, at *2 (D. Conn. Sept. 13, 2021) (alterations in original).

---

[2] Defendants alternatively request the Court to stay this matter, pending appeal of the underlying Connecticut state court judgment for which Plaintiff seeks indemnification and contribution. Because the Court grants Defendants' motion to dismiss both Counts of the Amended Complaint, the Court need not address Defendants' request to stay.

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint. . . ." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007); *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010). "[I]f . . . matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in [Fed. R. Civ. P.] 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *Glob. Network Commc'ns, Inc. v. New York*, 458 F.3d 150, 154–55 (2d Cir. 2006).

There are exceptions to this general rule, however. *Halebian v. Berv*, 644 F.3d 122, 131 (2d Cir. 2011). Indeed, "it is well established that on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court may also rely upon documents . . . incorporated by reference in the complaint." *Id.*; *McCarthy*, 482 F.3d at 191. And "[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). The court "may also properly consider matters of which judicial notice may be taken, or documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Halebian*, 644 F.3d at 131 (internal quotation mark omitted); *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). Particularly, "[a] court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation but rather to establish the fact of such litigation and related filings." *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008); *Glob. Network Commc'ns*, 458 F.3d at 157; *Kavowras v. N.Y. Times Co.*, 328 F.3d 50, 57

(2d Cir. 2003). "[M]atters judicially noticed by the District Court are not considered matters outside the pleadings." *Staehr*, 547 F.3d at 426.

**Allegations**

The Court accepts as true the allegations in Plaintiff's Amended Complaint, which are as follows. Beginning in 2006, Plaintiff and Chugh entered into various business arrangements to invest in Indian real estate. Together they formed the business entity Trikona Advisers Limited ("TAL"). Plaintiff and Chugh each controlled a 50% interest in TAL. Plaintiff held his interest in TAL through an entity—Asia Pacific. Chugh held his interest in TAL through entities—ARC Capital, LLC and Haida Investments, Ltd.

During the 2008 economic crisis, Plaintiff and Chugh's relationship deteriorated and Chugh started his own investment and asset management firms to invest in Indian real estate. In response, Defendants, as Plaintiff's counsel, brought a derivative claim in the name of Asia Pacific against Chugh, and his related entities, in the United States District Court for the District of Connecticut ("D. Conn. Action"). Then, to obtain greater legal fees through TAL, Defendants advised Plaintiff to remove Chugh from TAL's Board of Directors without notice or a meeting, which allowed TAL to replace Asia Pacific in the D. Conn. Action. Consequently, Defendant took control of the D. Conn. Action and expanded its scope. Ultimately, Plaintiff, while represented by the Defendants, lost all claims advanced in the D. Conn. Action.[3]

After his removal from TAL's board, Chugh, through his entities, brought an action in the Cayman Islands to force TAL's liquidation. On January 31, 2013, the Cayman court found that

---

[3] This series of events formed the basis of a legal malpractice action Plaintiff also pursued against these Defendants in the District of Connecticut. On February 11, 2022, the court rendered summary judgment in favor of the Defendants. Notably, in that action, Plaintiff had sought to include allegations regarding the issuance of the press release discussed below and sought the amount of the judgment in the state court litigation as a measure of damages resulting from the alleged legal malpractice. The Defendants argued that the judgment was not an appropriate measure of damages in the malpractice case but the court did not need to reach this issue in rendering summary judgment for the Defendants.

4

liquidation was appropriate and appointed a liquidator to wind-up and take control of TAL. Thereafter, but before the D. Conn. Action ended, the liquidator wrote a letter to the court in the D. Conn. Action asserting that Cayman Islands law prohibited TAL from proceeding with any litigation absent leave of the Cayman court. Concerned about interference by the foreign liquidators, Defendants prepared a press release that accused Chugh of paying the liquidators $500,000 to interfere with the D. Conn. Action. After advising Plaintiff to adopt the press release, Defendants issued it on Business Wire in March 2013.

Due, in part, to his removal from TAL's Board of Directors and the issuance of the press release, Chugh brought a lawsuit against Plaintiff, and his related entities, in Connecticut state court ("state court action"). Ultimately, after a jury trial, the court found Plaintiff personally liable for $3,748,828.76 in compensatory damages and $2,965,488.29 in punitive damages for breach of fiduciary duty and breach of contract based on Chugh's removal from TAL's board. The court also found Plaintiff personally liable for $4,000,000 in lost profits and $1,201,000 in punitive damages for libel based on the press release (collectively, "state court judgment"). Plaintiff appealed the state court judgment, and the appeal is currently pending before the Connecticut Supreme Court. *Chugh v. Kalra*, S.C. 20562 (Conn.).[4]

In his Amended Complaint, Plaintiff seeks indemnification and contribution with respect to the state court judgment. (ECF No. 7). On January 25, 2021, Defendants filed a motion to dismiss Plaintiff's Amended Complaint. (ECF No. 19-1).[5] Defendants attached to their motion a settlement agreement and release from liability as between Defendants and Chugh and his related entities ("release"), the jury verdict form with respect to the state court judgment ("verdict form"),

---

[4] Oral argument was heard on October 13, 2021 but as of this writing, no decision has been rendered.
[5] On February 16, 2021, Defendants filed a motion to stay discovery and the parties' obligations under Local Rule 26(f) pending resolution of their motion to dismiss, which the Court granted on March 16, 2021.

and an affidavit of Defendants' counsel declaring that the aforementioned documents are true and accurate copies. (ECF No. 19-2). On March 1, 2021, Plaintiff filed an opposition to Defendants' motion. (ECF No. 23). On March 11, 2021, Defendants filed their reply to Plaintiff's opposition. (ECF No. 26). The Court heard oral argument on June 9, 2021.

**Discussion**

Defendants principally argue that Plaintiff's claims should be dismissed because Connecticut law[6] does not recognize a claim for contribution or indemnification among intentional

---

[6] Plaintiff argues in his memorandum in opposition to Defendants' motion to dismiss that "at this time, it has not been determined whether Connecticut law applies to the issues raised in this case." Plaintiff contends that the allegations set forth in the Amended Complaint do, in fact, set forth underlying facts that substantiate claims for indemnification and contribution, depending upon findings of fact and depending upon the jurisdictional law that is found to apply. Nowhere in Plaintiff's filings, or more important in his Complaint, does he suggest that the law of a different state applies to his claims. However, during oral argument on the instant motion, Plaintiff, for the first time, proposed the possibility that Massachusetts law applies, stating, "the law in the case . . . substantively . . . should not be Connecticut. It should be Massachusetts, because that's where [Defendant] Gilleran did all of the things that [Plaintiff] say[s] he did." ECF No. 19 at 17. Plaintiff further opined that Mass. Gen. L. Ch. 231B provides for his contribution claim where Connecticut law may not. However, Plaintiff did not concede that his claims fail under Connecticut law. Critically, Plaintiff advances no argument or analysis under which the allegations in the Complaint survive the motion to dismiss even assuming the application of Massachusetts law and it is not this Court's obligation to do so in the first instance. And, as indicated, Plaintiff does not cite to Massachusetts law anywhere in the Complaint or his written opposition to the motion to dismiss.

Ultimately however, no choice of law analysis is necessary as Plaintiff's opinion notwithstanding, he did not demonstrate that the outcome under Massachusetts law is different than the outcome under Connecticut law. "A federal court sitting in diversity applies the choice-of-law rules of the forum state." *Kinsey v. New York Times Co.*, 991 F.3d 171, 176 (2d Cir. 2021). "The threshold choice of law issue in Connecticut, as it is elsewhere, is whether there is an outcome determinative conflict between applicable laws of the states with a potential interest in the case. If not, there is no need to perform a choice of law analysis, and the law common to the jurisdiction should be applied." *Burns v. Quinnipiac University*, 120 Conn. App. 311, 320, 991 A.2d 666, *cert. denied*, 297 Conn. 906, 995 A.2d 634 (2010) (internal quotation marks omitted).

With respect to the claim for contribution, Mass. Gen. L. Ch. 231B provides in relevant part: "(a) . . . [W]here two or more persons become jointly liable in tort for the same injury to person or property, there shall be a right of contribution among them . . . . (b) The right of contribution shall exist only in favor of a joint tortfeasor . . . who has paid more than his pro rata share of the common liability . . . . No tortfeasor shall be compelled to make contribution beyond his own pro rata share of the entire liability." "This statute is designed equitably to distribute damages among all those liable in tort for the same offense. . . . Contribution claims are derivative and not new causes of action. Without liability in tort there is no right of contribution." *Berube v. City of Northampton*, 413 Mass. 635, 638, 602 N.E.2d 560 (1992) (citations omitted). "The language of this statute requires that the potential contributor be directly liable to the [the injured party]." *Liberty Mut. Ins. Co. v. Westerlind*, 374 Mass. 524, 526, 373 N.E.2d 957 (1978). Thus, for Plaintiff to have a claim for contribution against Defendants under Mass. Gen. L. Ch. 231B, Defendants would have to be directly liable to Chugh and his related entities. "[I]f injured party's recovery from potential contributor is barred, then contribution to another tortfeasor is also barred." *Berube*, 413 Mass. at 639 (citing J.R. Nolan & L.J. Sartorio, Tort Law § 437, at 183 (2d ed. 1989)).

tortfeasors. Defendants cite Connecticut case law, as well as federal courts applying such law, holding that parties guilty of intentional misconduct may not seek contribution or indemnity from other alleged tortfeasors. *See Preferred Acc. Ins. Co. of N. Y. v. Musante, Berman & Steinberg Co.*, 133 Conn. 536, 543, 52 A.2d 862 (Conn. 1947) ("Where there are two joint tort-feasors and each is guilty of intentional wrongdoing there may be sound justification for a denial of contribution[.]"); s*ee Lassow v. Jefferson Pilot Fin. Ins*. Co., No. CV010807131S, 2003 WL 22206242, at *9 (Conn. Super. Ct. Sept. 8, 2003) ("Following [the Connecticut Supreme Court's precedent in *Preferred Accident Ins. Co*.], other courts have stated that there can be no indemnification [for intentional torts].") (citing Superior Court cases); *see Martel v. Burkamp*, No. CVH 7684, 2009 WL 2243768, at *2 (Conn. Super. Ct. July 23, 2009) ("[T]he majority [of

---

Under Mass. Gen. L. Ch. 231B, the Defendants are not subject to a claim for contribution. Specifically, Chugh and his related entities have no viable cause of action against Defendants for the same injuries for which Plaintiff was held liable under Connecticut law. As set forth in Plaintiff's Amended Complaint, the conduct forming the basis of Plaintiff's liability for libel was a March of 2013 press release. "No action for libel or slander shall be brought but within two years from the date of the act complained of." Conn. Gen. Stat. § 52-597. The conduct forming the basis of Plaintiff's liability for breach of contract and breach of fiduciary duty involved the removal of Chugh from TAL's Board of Directors in January of 2012. "No action . . . on any contract in writing, shall be brought but within six years after the right of action accrues." Conn. Gen. Stat. § 52-576(a). "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." Conn. Gen. Stat. § 52-577; *see Ahern v. Kappalumakkel*, 97 Conn. App. 189, 192 n.3, 903 A.2d 266 (2006) ("[b]reach of fiduciary duty is a tort action governed by the three year statute of limitations contained within . . . § 52-577"). Because the statute of limitations for the causes of actions related to Chugh and his related entities' injuries long ago lapsed, Defendants are not liable to Chugh and his related entities for the same offenses for which Plaintiff was held liable. *See Berube*, 413 Mass. at 639 ("If one has a personal defense . . . that would bar liability, contribution is not allowed because it is only permitted from those liable, and not from those who are shown merely to be at fault.") (internal quotation mark omitted); *see also Dighton v. Federal Pacific Elec. Co.*, 399 Mass. 687, 690–91, 506 N.E.2d 509 (April 21, 1987) (third-party complaint for contribution dismissed because plaintiff's claim against third-party defendant was barred by the applicable statute of repose); *see also Ibeh v. City of Cambridge*, No. 9300012, 1994 WL 879731 at *2 (Mass. Super. Ct. January 26, 1994) (third-party complaint for contribution dismissed where the plaintiff's underlying claim against third-party defendant was barred by the applicable statute of limitations). Accordingly, Plaintiff has not demonstrated an outcome determinative conflict between Connecticut and Massachusetts law—the Defendants have no liability for contribution under either—and no choice of law analysis is required. *See Burns v. Quinnipiac Univ.*, 120 Conn. App. 311, 319–20, 991 A.2d 666 (2010) (finding no choice of law analysis necessary where plaintiff "failed to indicate . . . how the application of [foreign state] law would have resulted in a different outcome").

With respect to the claim for indemnification, Plaintiff offers no suggestion or argument that the law of Massachusetts might provide relief where Connecticut law does not. Alternatively, again without any bases for this assertion or analysis as to how or why, Plaintiff suggests that New York law may apply to his claims. "When the applicable law of a foreign state is not shown to be otherwise, we presume it to be the same as our own." *Walzer v. Walzer*, 173 Conn. 62, 76, 376 A.2d 414 (1977).

Superior Courts]⁷ view that there is no common law action for indemnification for intentional tortious conduct. Moreover, . . . the denial of indemnification claims where the only allegation against the claimant is premised on intentional misconduct serves to discourage such misconduct and is consistent with sound public policy."); *see Associated Constr. / AP Constr., LLC v. Hanover Ins. Co.*, No. 3:15-CV-1600 (MPS), 2018 WL 3747815, at *4 (D. Conn. Aug. 7, 2018) ("a party accused solely of intentional conduct cannot maintain a common-law indemnification action" under Connecticut law). Accordingly, Defendants argue that Plaintiff's indemnification and contribution claims are barred because it is apparent from the state court judgment that Plaintiff's liability arises from intentional tortious conduct warranting punitive damages on each count.⁸

In response, Plaintiff does not challenge the Defendants' reading of Connecticut law. Rather he challenges the propriety of the Court reaching these issues at this stage of the litigation. Specifically, Plaintiff objects, as a procedural matter, to the Defendants' reliance upon information outside of the Amended Complaint. As pertinent here, Plaintiff argues that it is improper for Defendants to rely on the verdict form to support their argument that the state court judgment was

---

⁷ "Although some . . . cases refer to a 'majority' of Connecticut Superior Court decisions, none cites a case that actually reflects a contrary view, *i.e.*, a view that a person sued solely for intentional wrongdoing may seek indemnity under the common law from a third party." *Associated Constr. / AP Constr., LLC v. Hanover Ins. Co.*, No. 3:15-CV-1600 (MPS), 2018 WL 3747815, at *4 n.8 (D. Conn. Aug. 7, 2018).

⁸ In addition, Defendants argue that indemnity and contribution are not generally available to joint tortfeasors under Connecticut common law. *See Gomeau v. Forrest,* 176 Conn. 523, 524, 409 A.2d 1006 (1979) ("The common law of this state . . . does not permit contribution between joint tortfeasors."); *see also Skuzinski v. Bouchard Fuels, Inc.*, 240 Conn. 694, 697, 694 A.2d 788 (1997) ("Ordinarily there is no right of indemnity or contribution between joint tort-feasors."). This rule is well-established, and has only a narrow exception for certain types of indemnity and contribution claims. *See Crotta v. Home Depot, Inc.,* 249 Conn. 634, 642, 732 A.2d 767 (1999) (recognizing narrow exception to this general rule "[w]here . . . one of the defendants is in control of the situation and his negligence alone is the direct immediate cause of the injury and the other defendant does not know of the fault, has no reason to anticipate it and may reasonably rely upon the former not to commit a wrong, it is only justice that the former should bear the burden of damages due to the injury"). Plaintiff makes no argument that his allegations satisfy this narrow exception. The Defendants also assert that Plaintiff cannot state a claim for statutory contribution. Under Conn. Gen. Stat. § 52- 572h(g) and (h), where more than one tortfeasor has been held liable to a plaintiff for negligence but plaintiff has been unable to collect the damages apportioned to one or more defendants, a party may, subject to several prerequisites, seek contribution for those apportioned damages from the other tortfeasors against whom judgment has been rendered. Specifically, Defendants argue that this statute is inapplicable on its face. The Court agrees and notes that Plaintiff makes no claim to the contrary.

premised on a finding of intentional misconduct. Plaintiff argues that these facts are "nowhere referenced in the Amended Complaint."[9]

In reply, the Defendants assert that the Plaintiff's allegations are sufficient for the Court to conclude that he was held liable for intentional torts or misconduct but alternatively, the Court is permitted to take judicial notice of the state court litigation in determining that Plaintiff was found liable for intentional misconduct and that therefore no claim for indemnification or contribution can plausibly be pleaded in light of the case law cited above. The Court agrees with the Defendants on both issues.

Turning to the allegations in the Complaint, Plaintiff alleges that the state court judgment "found Plaintiff personally liable to Chugh for breach of a partnership agreement, breach of fiduciary duty, and libel, as well as punitive damages on all three." (ECF No. 7 ¶ 4). Libel is an intentional tort. *Imperial Cas. & Indem. Co. v. State*, 246 Conn. 313, 330, 714 A.2d 1230 (1998) (defining libel as an "inherently intentional tort"); *see also Lippolis v. Panagoulias*, No. NNHCV136041292S, 2014 WL 7272285, at *3 (Conn. Super. Ct. Nov. 17, 2014) ("[d]efamation is comprised of the tort[] of libel . . . [and] is an intentional tort"). "Negligence alone is insufficient to support a claim of a breach of fiduciary duty." *Cammarota v. Guerrera*, 148 Conn. App. 743, 759, 87 A.3d 1134 (2014). And the award of punitive damages for the breach of the partnership agreement and the breach of fiduciary duty is particularly compelling. Under Connecticut law, "[i]n order to obtain an award of common-law punitive damages, the pleadings must allege and

---

[9] Plaintiff also argues that it is improper for Defendants to rely on the release and the state court's ruling on post-verdict motions regarding the state court judgement ("post-verdict opinion"). However, the merits of Defendants' motion to dismiss are not dependent upon the Court's consideration of these documents. Indeed, the release merely supports one of Defendants' alternative arguments regarding Kalra's claim for contribution, which the Court does not address herein, and the Court need not consider the post-verdict opinion to determine whether the state court judgment was premised on a finding of intentional misconduct. Accordingly, the Court need not consider the release or the post-verdict opinion or decide the propriety of their consideration.

9

the evidence must be sufficient to allow the trier of fact to find that the defendant exhibited a reckless indifference to the rights of others or an intentional and wanton violation of those rights." *Landmark Inv. Grp., LLC v. CALCO Const. & Dev. Co.*, 318 Conn. 847, 878, 124 A.3d 847 (2015); *see also Iino v. Spalter*, 192 Conn. App. 421, 466, 218 A.3d 152 (2019) ("To furnish a basis for recovery of punitive damages, the pleadings must allege and the evidence must show wanton or wilful malicious misconduct."). Accordingly, the allegations in the Amended Complaint alone as to the state court judgment requires this Court to conclude that the state court judgment was the result of Plaintiff's reckless indifference to the rights of others or an intentional and wanton violation of those rights.

Notwithstanding, it is also entirely proper for the Court to take judicial notice of the verdict form in assessing the adequacy of the Amended Complaint, or alternatively to rely on the verdict form as integral to the Amended Complaint. And if there was any doubt following a straight forward assessment of the allegations as to whether Plaintiff was held liable for intentional misconduct in the state court action, it is removed upon examination of the verdict form.

The verdict form is a publicly filed judicial record of the underlying state court action which does little more than record the outcome of that proceeding. The fact of the verdict "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991) ("Of course, [a court] may . . . consider matters of which judicial notice may be taken under Fed. R. Evid. 201."). "[C]ourts routinely take judicial notice of documents filed in other courts . . . to establish the fact of such litigation and related filings." *Kramer*, 937 F.2d at 774; *see Kavowras*, 328 F.3d at 57 ("Judicial notice may be taken of public filings."); *see Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) ("It is well established that a district court may rely on

matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including case law."); *see also Chien v. Skystar Bio Pharm. Co*., 623 F. Supp. 2d 255, 260 n.3 (D. Conn. 2009), *aff'd*, 378 F. App'x 109 (2d Cir. 2010) (finding that "a court may judicially notice prior pleadings, orders, judgments, and other items appearing in the court records of prior litigation that are related to the case before the [c]ourt" when deciding a Rule 12(b)(6) motion). Accordingly, the Court takes judicial notice of the verdict form as a public filing contained in the judicial record of the state court action and will consider it for purposes of Defendants' Rule 12(b)(6) motion.[10]

Moreover, the verdict form is integral to the Amended Complaint. It cannot be disputed that Plaintiff had notice of the content of the verdict form and relied on its terms and effects in drafting the Amended Complaint. The verdict form, which was accepted by the court, established Plaintiff's liability with respect to the underlying state court action and authorized the court to impose punitive damages. In essence, the verdict form informed the terms of the state court judgment for which Plaintiff now seeks indemnity and contribution. Although the Amended Complaint does not explicitly reference the verdict form, it details the terms of the state court judgment and specifies that the state court judgment was rendered after a jury trial. (ECF No. 7 ¶ 3, 4, 145, 160-63). Further, the Amended Complaint mentions particular factual findings as set forth in the verdict form. (ECF No. 7 ¶ 144–45). Because Plaintiff relies heavily on the terms and effects of the verdict form, it is integral to the Amended Complaint. *See Chambers*, 282 F.3d at 153 ("Even where a document is not incorporated by reference, the court may nevertheless

---

[10] Although the Court concludes that it is proper to take judicial notice of the verdict form, the Court does not consider the verdict form for the truth of the matters asserted, *i.e.*, the Court considers the fact of the jury's conclusions, not the accuracy of same. *See Glob. Network Commc'ns*, 458 F.3d at 157 ("[A]lthough the [materials] may be public records of which a court may take judicial notice, it may do so on a motion to dismiss only to establish the existence of the opinion, not for the truth of the facts asserted in the opinion."); *see Staehr*, 547 F.3d at 425 ("We have previously held that it is proper to take judicial notice of the fact that . . . prior lawsuits . . . contained certain information, without regard to the truth of their contents.").

consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.). For this reason as well, the verdict form is properly before the Court for consideration with respect to Defendants' Rule 12(b)(6) motion. *See id*. ("[W]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.").

In consideration of the verdict form, it is clear to the Court that the state court judgment was premised on the juries' factual findings that Plaintiff's misconduct constituted a wanton and willful violation of Chugh and his related entities' rights. Specifically, the verdict form contains the jury's determination that the Plaintiff breached his fiduciary duty to Chugh; that the Plaintiff breached his partnership agreement with Chugh; that Plaintiff, with malice, published a false statement about Chugh and that, as a result of all three findings, Chugh was entitled to punitive damages. As discussed above, these findings implicate only intentional misconduct. Indeed, the verdict form merely makes crystal clear what the Plaintiff himself has already alleged.[11]

Upon review of the cited and available authority, the Court agrees with the Defendants that Plaintiff's claims for indemnity and contribution are barred as a matter of Connecticut law. *See Preferred Acc. Ins. Co.*, 133 Conn. at 543 ("Where there are two joint tort-feasors and each is guilty of intentional wrongdoing there may be sound justification for a denial of contribution[.]");

---

[11] Relying on the doctrine of res judicata, Plaintiff argues that Defendants cannot rely on the jury findings from the state court action to establish that Plaintiff's underlying misconduct was intentional for purposes of this litigation. Specifically, Plaintiff avers that because Defendants were not parties to the state court action, the jury's findings are irrelevant. Plaintiff is incorrect. As Defendants correctly reply, it is the doctrine of collateral estoppel which is applicable here. Collateral estoppel "prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action." *Aetna Cas. & Sur. Co. v. Jones*, 220 Conn. 285, 296 (1991). The doctrine does not require mutuality of parties in order to be invoked. *See id.* at 300 ("mutuality of parties is no longer required to invoke collateral estoppel"). Accordingly, because the jury in the state court action necessarily found that Plaintiff's misconduct was reckless or intentional in order to impose punitive damages and liability for libel, if anyone, it is the Plaintiff who is estopped from relitigating this issue.

*see Associated Constr.* 2018 WL 3998972, at *4 ("the more persuasive reading of Connecticut law" supports the position that a person liable for intentional torts may not seek indemnification); *see Starview Ventures v. Acadia Ins.*, No. CV065003463S, 2008 WL 4415783, at *5 (Conn. Super. Ct. Sept. 9, 2008) ("every trial court decision has denied indemnification to parties . . . charged with intentional tortious conduct") (citing Superior Court cases).[12]

This conclusion, reached by multiple courts is not spun from whole cloth. Rather it is wholly consistent with the Connecticut Supreme Court's established contours for indemnification and contribution claims referenced above. First, to date, the Connecticut Supreme Court has only identified a narrow exception to the general rule against common law indemnification and contribution claims in the context of negligence. *See RCM Techs., Inc. v. SNC-Lavalin Constructors Inc.*, No. 3:19-CV-00879 (MPS), 2020 WL 4926597, at *1 (D. Conn. Aug. 21, 2020) (stating that, under Connecticut law, "even if a claim for common law indemnity arises from the performance of a contract, there must be an allegation of negligence and the claim must satisfy the other elements of a common law indemnity claim"). In *Kaplan v. Merberg Wrecking Corp.*, 152 Conn. 405, 416, 207 A.2d 732 (Conn. 1965), the Connecticut Supreme Court held that a party seeking indemnification must establish that: "(1) [the other tortfeasor] was negligent; (2) [the other tortfeasor's] negligence, rather than the [plaintiff's] . . ., was the direct, immediate cause of the accident and the resulting injuries . . .; (3) [the other tortfeasor] was in control [of] the situation to

---

[12] Only in a footnote within Plaintiff's memorandum in opposition to Defendants' motion to dismiss does Plaintiff contend that Connecticut law may not bar indemnity claims for intentional tortfeasors. Plaintiff bases this contention on the lack of appellate authority on the issue as well as two Connecticut Superior Court cases, *A & G Contracting, Inc. v. Design/Build Collaborative, LLC*, No. CV106008755, 2012 WL 4377775, at *3 (Conn. Super. Ct. Aug. 23, 2012) and *Segway, Inc. v. Special Olympics Connecticut, Inc.*, No. CV116022089S, 2015 WL 1244509, at *9 (Conn. Super. Ct. Feb. 23, 2015). These cases were analyzed in *Associated Constr.*, wherein the court found that "a party accused solely of intentional conduct cannot maintain a common-law indemnification action." 2018 WL 3747815, at *4. As articulated in *Associated Constr.*, "[t]he two Connecticut Superior Court decisions Plaintiff cites are not to the contrary" and "the reasoning of these cases is inapplicable to this case." *Id*. Plaintiff also cites to caselaw from other jurisdictions. The Court does not find these cases persuasive.

the exclusion of [the] plaintiff[]; . . . [and] (4) the plaintiff[] did not know of [such] negligence, had no reason to anticipate it, and could reasonably rely on [the other tortfeasor] not to be negligent." The Supreme Court recognized that there may be circumstances in the negligence context where liability might attach to a more passive tortfeasor, *i.e.*, an absent property owner, but that transferring that liability to a more active and culpable tortfeasor, *i.e.*, the injury producing tenant, may be nonetheless appropriate. *See id*. at 415 ("An indemnitee may be chargeable with personal negligence, independent of any negligence of the indemnitor, and still not be chargeable with active or primary negligence. Personal independent negligence may be passive or secondary negligence. . . . Indeed in . . . [an] indemnity action the indemnitee [could] prove . . . that the negligence with which it had been found chargeable was passive or secondary, while the indemnitor had been negligent and in a manner which was active and primary."). Plaintiff makes no argument that his allegations satisfy this narrow exception for indemnification and contribution claims. And this construct simply does not work in the context of intentional torts. It is difficult if not impossible to discern how one might be a "passive" tortfeasor in the context of intentional liability producing conduct or that the Connecticut Supreme Court would expand the *Kaplan* rationale for permitting indemnification and contribution claims at all to those whose conduct is deemed wanton, willful or intentional. *See Herrera v. Adams*, No. CV106004615, 2011 WL 6756914, at *4 (Conn. Super. Ct. Nov. 30, 2011) ("Trial courts have not extended common-law indemnification to intentional tortious conduct and this court has not been provided with, nor found, any controlling or persuasive support for extending common-law indemnification to reckless tortious conduct.").

Accordingly, the Court concludes that the Plaintiff has failed to state either a claim for indemnification or a claim for contribution and the Amended Complaint is dismissed. *See*

*Associated Fin. Corp. v. Kleckner*, 480 F. App'x 89, 90 (2d Cir. 2012) ("Dismissal under [Rule] 12(b)(6) is appropriate when it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.") (internal quotation marks omitted).

**Conclusion**

For all of the foregoing reasons, the Defendants' motion to dismiss is GRANTED. The Clerk of the Court is directed to close the case.

**SO ORDERED** at Bridgeport, Connecticut, this 15th day of March 2022.

                                        */s/ Kari A. Dooley*
                                        KARI A. DOOLEY
                                        UNITED STATES DISTRICT JUDGE